## Case No. 7,176.
### The JAMES.

## Case No. 7,177.
### JAMES v. ATLANTIC DELAINE CO. et al.
[3 Cliff. 614.] 2
Circuit Court, D. Rhode Island. Nov. Term, 1867.

1 [Reprinted from 2 N. B. R. 227 (Quarto, 78), by permission.]
2 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

J. H. Parsons, T. A. Jencks, and Caleb Cushing, for complainant.

Abraham Payne and R. W. Greene, for respondents.

CLIFFORD, Circuit Justice. Before proceeding to consider the merits of the issue, it becomes necessary to determine the question as to the competency of certain witnesses examined by the respondents. Two depositions, to wit, that of George W. Chapin and that of Lyman B. Frieze, offered by the respondents, are objected to by the complainant, because they are parties to the suit. They were both taken (as now offered) subsequent to the passage of the Act of the 3d of March, 1865, which provides that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. 13 Stat. 533. The original complainant died in October, 1862, intestate, as appears by the record. Tested by the foregoing provision alone, it is quite clear that the deponents are not competent witnesses to testify against the present complainant as to any transaction with or statement by her intestate, as they were not called to testify by the opposite party, nor required to testify by the court. Application for such an order was never made to the court, and none such was ever passed in the case. None of the prior proceedings have any effect to take the two depositions out of the operation of that provision of law. Both of the deponents gave depositions in the case before the first hearing upon the merits.

They were taken at that time also by the respondents upon the ground that the practice of the state courts furnished the rule of decision; but they were stricken out by the order of the court before the hearing, because parties, except in certain special cases, were not, under the general rules of equity law, competent witnesses in suits in equity, as previously decided by this court. Subsequently the parties were heard, and the case was held under advisement; but the court, at the June term, ordered that the same should be reargued, and thereupon it was ordered, upon motion and consent of parties, that the time for taking further testimony be extended to the 1st of November, in the same year. In the meantime the complainant died, and the cause being revived, the time for taking testimony was extended from time to time, until the 1st of April, 1865, as appears in the supplemental record. Suffice it to say, that both of these depositions were taken subsequent to the act of the 3d of March, 1865, and the question of the competency of the deponents is controlled by that provision.

Any restatement of the facts proved, except to a limited extent, is unnecessary, as they are succinctly stated in the narrative of the case. The execution of the contract and of the mortgage is admitted, and there is no controversy as to the deed of assignment and the appointment of the assignee in insolvency. Satisfactory proof, also, is exhibited that he completed the contract, and that the buildings and machinery were accepted by the other contracting parties. The respondents admit that the mutual releases as between the company and the assignee, as set forth in the bill of complaint, were duly executed. The effect of these several instruments was, that the entire interest of the original complainant in the company property and in the capital stock, and his entire interest in the mortgaged estate, passed into the hands of the respondent corporation. Mention is not made of the fact that the mortgage was executed to the treasurer of the company, as it is not controverted that he held it as trustee for the company. The corporation respondents claimed a lien upon the stock held by the original complainant, under the provisions of their charter; and it is fully proved that their treasurer in February, 1853, advertised the other mortgaged property for sale, and that they were prevented from carrying out their intention by the injunction suit prosecuted by the assignee. They also claimed damages for the delay in completion of the contract, but the original complainant claimed a much larger sum for moneys expended in extra work not included in the contract.

Full proof is also exhibited that the treasurer of the respondent corporation was several times requested to furnish a true statement of the accounts between the parties,

and that the only one he ever did present deserving the name is the one he presented, or caused to be presented, to the assignee, and which was used as the basis of the computations at the date of the settlement. Beyond question, that statement was inaccurate in large amounts, and greatly so to the prejudice of the original complainant.

Viewed in every aspect, it is the conclusion of the court, not only that it was false, but that it was furnished with the intent to deceive and defraud, by promoting a settlement prejudicial to the original complainant and more favorable to the respondent corporation than truth and justice would admit. Such being the views of the court, it is clear that the complainant is entitled to a decree, unless some one or more of the defenses can be sustained.

The settled rule of law is, that the assignor in such a case is entitled to the residue of the estate, after his debts outstanding at the date of the assignment are paid. Halsey v. Fairbanks [Case No. 5,964]; Brashear v. West, 7 Pet. [32 U. S.] 608. By the extinguishment of the debts, the assignee became the trustee of the complainant; and the latter, as the assignor, became clothed with all the rights and powers of a cestui que trust to the same extent as the creditors previously had whose claims he had extinguished. Lazarus v. Com. Ins. Co., 5 Pick. 81. Consequently the complainant was the proper party to come into a court of equity, and pursue the trust estate, it appearing that it had been fraudulently or improperly parted with by the trustee. Story, Eq. Pl. § 221; Oliver v. Piatt, 3 How. [44 U. S.] 400; Lewin, Trusts, 730; Hovenden v. Lord Annesley, 2 Schoales & L. 633. Where the purposes of the trust have been satisfied, equity in a proper case will compel a conveyance from the trustee to cestui que trust, as he has the sole beneficial interest.

The argument for the respondent is that these principles cannot apply in this case, because it appears that two of the debts of the original complainant have not been paid. Much weight would be given to that objection as between the assignor and assignee, if the estate continued in the latter, and he was still engaged in executing the trust; but when it appears that the trust property has been fraudulently or improperly conveyed to another, not as a means of executing, but as a means of extinguishing the reversionary interest of the assignor, the objection cannot be sustained. The rights of such creditors in such a case will be protected in the decree granting relief. Want of diligence in the institution of the suit is another defense much pressed in the argument. The record shows that the mutual releases were executed on the 2d of March, 1853; and the bill of complaint was filed on the 1st of March, 1859, before the claim was barred by the statute of limitations. But the argument is, that staleness of claim is often admitted in equity as a good answer to a bill of complaint, when the period which has elapsed is less than the time required as a legal bar to a common-law suit, and the proposition is correct, as was held by this court, and has since been affirmed in the supreme court. Badger v. Badger, 2 Wall. [69 U. S.] 94. The correctness of that rule, properly applied, cannot be doubted, but it is equally clear that it should seldom or never be applied in cases of trust, where the means of knowledge are wholly or even chiefly on one side. When the fraud charged and proved consists of misrepresentations and concealments, courts of equity are reluctant to apply the rule at all, unless it appear that the rights of innocent third parties will be injuriously affected if that defense is overruled. The affairs of the complainant had become much complicated, and the evidence shows that the mutual releases were executed without his consent and against his wishes. He lost by the arrangement, not only all claim to the possession or control of the property, but all direct means of consulting the books and papers containing the evidence of his rights. Looking at the circumstances of the case, I am clearly of the opinion that it is one where equity will apply that rule. Provost v. Gratz, 6 Wheat. [19 U. S.] 481; Michoud v. Girod, 4 How. [45 U. S.] 503; Baker v. Whiting [Case No. 787]; 2 Story, Eq. Jur. §§ 15, 20.

The details of the evidence have purposely been avoided, as the case is one, if the decree be for the complainant, which must go to a master, where further testimony may be taken as to amounts. The conclusion of the court is, that the complainant is entitled to a decree; that the release of March 2, 1853, given by the assignee to the respondent corporation, is void, and that the same be set aside as having been obtained by fraudulent representation and concealment; and also to a decree for an account, including an account of all assigned and mortgaged property, subject to the payment of the debts, if any, due to the creditors of the assignor, as secured in the instrument of assignment, reserving all further orders or decrees as for other specific relief or otherwise, until the true state of the accounts is fully ascertained. Decree accordingly, and the case must be referred to a master, to state the account for the consideration of the court.